**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WILLIAM CABRERA,** | ) | |
| **Petitioner,** | ) | |
| | ) | **11 C 6141** |
| **v.** | ) | |
| | ) | **Judge Joan H. Lefkow** |
| **YOLANDE JOHNSON,**[1] | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

*Pro se* petitioner William Cabrera is serving a 60-year sentence for murder, a 14-year sentence for burglary, a 14-year sentence for robbery, and two sentences of natural life for murder. He has petitioned this court for a writ of habeas corpus under 28 U.S.C. § 2254 in connection with his most recent murder conviction and sentence of natural life, which was based on the fatal beating of a Illinois Department of Corrections guard. For the following reasons, the petition is denied.

## BACKGROUND

The court will presume that the state court's factual determinations are correct for the purposes of habeas review as Cabrera neither contests them nor points to clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd* v. *Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). The court thus adopts the state court's recitation of the facts, and begins by summarizing the relevant facts and this case's complex procedural posture. *See People* v.

---

[1] Cabrera's petition named Yolande Johnson, the former warden of the now-closed Tamms Correctional Center, as the respondent. When the Tamms Correctional Center closed, Cabrera was transferred to the Pontiac Correctional Center in Pontiac, Illinois, where Randy Pfister is the Acting Warden. For security reasons, Illinois Department of Corrections staff decided to physically house Cabrera at the El Dorado Correctional Facility in El Dorado, Kansas. However, Randy Pfister retains custody. Dkt. 29. Thus, he is hereby substituted as the respondent. *See* Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts.

*Cabrera*, No. 3-95-148 (Ill. App. Ct. 1998) (unpublished order) (Dkt. 15-1) (direct appeal);[2]

*People* v. *Cabrera*, 764 N.E.2d 532, 326 Ill. App. 3d 555, 261 Ill. Dec. 917 (Ill. App. Ct. 2002)

(first state post-conviction appeal); *People* v. *Cabrera*, No. 3-04-258 (Ill. App. Ct. Jul. 7, 2006)

(unpublished order) (Dkt. 15-12) (second state post-conviction appeal); *People* v. *Cabrera*, No.

3-08-558 (Ill. App. Ct. 2010) (unpublished order) (Dkt. 15-16) (third state post-conviction

appeal);[3] and portions of the 8,000+ page state court record provided by the respondent (Dkt.

15). The court finds that the respondent has provided relevant portions of the record and thus

proceeds based on the materials before it. *See* Rule 5(c) of the Rules Governing Section 2254

Cases in the United States District Courts.

### A.    State Direct Proceedings

In 1989, Cabrera was incarcerated at the Stateville Correctional Center due to convictions

for first-degree murder, burglary, and robbery. *Cabrera* v. *Hinsley*, 324 F.3d 527, 529 (7th Cir.

2003) (appellate order addressing Cabrera's petition for a writ of habeas corpus based on his

three state court convictions). He was also serving a sentence of natural life for an unrelated

murder conviction. *Id.* At trial, the State contended Cabrera was a high-ranking leader of the

Latin Kings street gang and held the position of "nation enforcer." In that role, he was

responsible for enforcing the laws of the Latin Kings nation.

While Cabrera was incarcerated at the Stateville Correctional Center, Officer Lawrence

Kush was employed as a correctional officer there. Officer Kush had a reputation for being very

---

[2]   The Illinois Appellate Court's unpublished order affirming Cabrera's conviction is dated "1998." The copy provided by the respondent is not file-stamped.

[3]   Like the Illinois Appellate Court's unpublished order for Cabrera's direct appeal, the order addressing his third state post-conviction petition is dated with the year and the copy provided by the respondent is not file-stamped.

thorough when conducting "shakedowns" of prisoners' cells to search for drugs, make-shift weapons, and money. On April 1, 1989, Officers Kush and Selmon searched the cell of inmates Gatto and Torres. The officers found homemade knives, cocaine, and written gang materials.

According to Officer Selmon, Gino Colon, one of the two highest ranked members of the Latin Kings street gang, was outside the cell door during the search. Colon believed that the shakedowns were interfering with the Latin Kings' drug business and stated that both officers would get what was coming to them. Colon thus ordered a "hit" on Officer Kush. The State presented evidence that Cabrera's position as a nation enforcer meant he was responsible for enforcing the hit. Cabrera ordered two lower-ranking gang members, fellow prisoners David Starks and Salvatore Giancana, to carry out the hit.

On the Thursday before July 1, 1989, Giancana visited the cell of inmate Vito Spiezio, who was affiliated with the Latin Kings. According to Spiezio, Giancana was upset about being ordered to execute a hit on an officer because Giancana had only nine months left to serve on his sentence. Spiezio said he would try to help Giancana.

After Cabrera learned that Spiezio knew generally that a hit had been planned, he told Spiezio to meet him at the prison barbershop the following morning. While at the barbershop, Spiezio spoke with Cabrera, Giancana, and Starks. Spiezio learned that the hit was directed at Officer Kush and that Colon was intent on executing the hit. According to Spiezio, he had further conversations with Cabrera about efforts by Giancana and Sparks to get out of doing the hit. Spiezio also testified that he spoke with other inmates, including Wilfredo Rosario, about the hit.      On July 1, 1989, Cabrera told Spiezio that Colon was adamant about carrying out the hit that day. While Spiezio was walking to his cell after helping run a handball tournament,

he saw Officer Kush.  As the two men crossed paths walking in opposite directions, Spiezio saw Giancana and Starks approach.  Spiezio thought a hit was being directed at him as he was not in good standing with the Latin Kings.  He ducked as Giancana swung a pipe at Officer Kush and then left the scene.

Starks and Giancana, who were wearing prison jump suits, gloves, and stocking caps with cut-out holes, hit Officer Kush's head and body repeatedly with pipes.  When other prisoners and prison officials discovered Officer Kush, he was vomiting and bleeding from his head.  He was pronounced brain dead upon his arrival at the hospital.  Prison officials recovered jump suits, gloves, stocking caps, pipes, and a radio from the prison grounds.

During cross-examination, Spiezio stated he benefitted from testifying as the State agreed to recommend probation in connection with a guilty plea for conspiracy to commit aggravated battery.  Spiezio also testified that he did not recall telling an investigator that he went along with what he was told to say, had lied to the grand jury based on threats to release him into the prison's general population, and had told another inmate he was fabricating stories to cast suspicion on others.

Cabrera was convicted of first degree murder.  After the jury directed the court not to impose the death penalty, Cabrera was sentenced to natural life imprisonment.  Cabrera appealed with the assistance of counsel and contended his conviction was not supported by sufficient evidence because Spiezio's testimony was unreliable.  The Illinois Appellate Court rejected Cabrera's sufficiency of the evidence argument and affirmed.  Cabrera filed an unsuccessful petition for leave to appeal ("PLA") with the Illinois Supreme Court raising the same issue but did not file petition for a writ of certiorari with the United States Supreme Court.

**B.     State Post-Conviction Petition Proceedings**

    **1.     Cabrera's First Hearing (Due Process)**

Cabrera filed a timely *pro se* post-conviction petition pursuant to 725 Ill. Comp. Stat. § 5/122-1.  On March 10, 1999, he filed an amended petition with the assistance of counsel contending that (1) trial counsel was ineffective for failing to call inmates Starks and Rosario to testify at trial since Starks would have testified Cabrera was not involved in the hit and Rosario would have denied that he spoke with Spiezio about the hit and thus impeached Spiezio; and (2) his due process rights were violated because correctional officers threatened to bring federal drug charges against inmate Brian Nelson if he testified for the defense, causing Nelson to refuse to testify.  The trial court rejected the ineffective assistance of counsel claim but ordered a hearing on the due process claim.

At the hearing, Nelson testified that Spiezio, not Cabrera, enforced the hit.  Nelson also stated that he refused to testify for the defense at trial because Russell Nelson, a Department of Corrections investigator, threatened to charge him criminally.  Russell Nelson testified and denied he threatened Brian Nelson.  The trial court found that Brian Nelson's testimony was not credible and denied Cabrera's due process claim.

Cabrera appealed, arguing,  (1) his sentence was unconstitutional under *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); (2) intimidation directed at Brian Nelson prevented him from testifying and thus violated Cabrera's due process rights; and (3) trial counsel was ineffective for failing to call Starks and Rosario to testify for the defense. The Illinois Appellate Court affirmed the rejection of Cabrera's *Apprendi* and due process claims

but remanded so the trial court could hold an evidentiary hearing to address whether trial counsel was ineffective for failing to call Starks and Rosario.

### 2. Cabrera's Second Hearing (Ineffective Assistance of Trial Counsel)

On November 25, 2003, the state trial court held a second evidentiary hearing to address Cabrera's ineffective assistance of trial counsel claim. The post-conviction court appointed public defender Gregory Reeder to represent Cabrera. Initially, Reeder advised the court that he intended to withdraw because he had been supervised by one of Cabrera's two trial attorneys (Roy Sabuco). Reeder never sought to withdraw, however.

Michelle Hansen, Cabrera's second trial attorney, testified that Starks and Rosario were on her witness list for trial. She could not interview Starks because he was a co-defendant and his attorney instructed him to refuse to speak with her. Hansen was able to interview Rosario and did not believe his testimony would be beneficial, explaining:

> Aside from his criminal record and the fact that my conversation with him did not yield anything that I thought would be positive for Mr. Cabrera, it was just a matter of trial strategy that we decided that it would not benefit Mr. Cabrera if we called [Rosario] to testify . . . . [N]o matter what [Rosario] said, I didn't believe anything he said in that regard would be believeable because of the fact that Mr. Rosario had so much more rank with the organization that it would be very unlikely that he would have any conversation or admit to any conversation with Mr. Spesio [*sic*]."

Resp. Ex. K at 4947-48.

Hansen also testified that she and Sabuco, her co-counsel, believed their cross-examination of Spiezio was effective, conceded that the statement that there was ample evidence to convict even without Spiezio's testimony was "fair," and stated that the defense team "decided that it would not benefit Mr. Cabrera to bring in a bunch of convicted felons to attempt to back him up because we were attempting to show that the testimony of Mr. Spesio [*sic*], who

is also a convicted felon, was not believable. So why would we bring in other convicted felons and expect the jury to believe them?" *Id*. at 4948–49. She thus decided not to call Spiezio, discussed the decision with Cabrera, and obtained his approval.

Sabuco also testified. He confirmed that Starks's attorney refused to allow Starks to testify. He also discussed the rationale for not calling Rosario, stating that he and Hansen told Cabrera that "all things considered, we did not recommend calling Mr. Rosario as a witness" because

> it was part of our trial strategy to as much as possible keep inmates off the stand and to attack the State's case, which we felt was weak, by cross-examining their witnesses and getting information to impeach their witnesses as much as we could.
>
> We felt we ran a great risk by putting inmates on the stand for a number of reasons. The primary reason is that their testimony would be subject to attack by the State, their credibility, and thus the Defense's credibility. Secondly, it would be very difficult to lock in their testimony in any reasonable fashion . . . . There was also the State's theory in this – the State's theory in this case was that it was a gang ordered hit on a correctional officer. We did not feel it would be beneficial to the Defense to put gang members on the stand to testify because their credibility would be such that it would undermine the defense that we put on.

*Id*. at 4964-65. Sabuco testified that he thought Cabrera was "on the same page throughout the course of the trial" regarding strategic decisions. *Id*. at 4965–66. On cross-examination, Sabuco clarified that Cabrera understood the reasons for not calling Rosario and agreed to this course of action even if he may not have been "in harmony" with the decision and instead "understood the reasons why we decided not to call [Rosario]." *Id*. at 4968. Sabuco also testified that Cabrera understood his attorneys thought that calling Starks would not be beneficial given Starks's gang membership and anticipated testimony.

After hearing this evidence, the trial court recessed the hearing so the defense could writ in Starks and Rosario. Approximately four months later in March of 2004, the defense rested after consulting with Cabrera and without additional witnesses as they could not locate Rosario. Based on Starks's statements to Cabrera, they also believed Starks would be uncooperative and any attempt he might make to exonerate Cabrera would not be helpful given Cabrera's defense theory and Starks's credibility issues.

The post-conviction trial court ultimately concluded that Cabrera's trial lawyers' decisions were "all tactical" because the lawyers knew what Starks and Rosario would testify to if called and discussed "what to do about [Starks and Rosario]. They compared the testimony of those witnesses and what they understood their contributions could be with the other witnesses that they called. They did make efforts and conscience [sic] decisions." *Id*. at 5012–14.

Cabrera appealed the denial of post-conviction relief based on the ineffective assistance of counsel, arguing that Reeder, the lawyer who represented him during the post-conviction evidentiary hearing, had a conflict of interest because he had been supervised by Sabuco, one of Cabrera's two trial lawyers. *See People* v. *Cabrera*, No. 3-04-0258 (Ill. App. Ct. 2006) (Resp. Ex. L); *People* v. *Cabrera*, No. 3-08-0558 (Ill. App. Ct. May 18, 2010) (Resp. Ex. P). The Illinois Appellate Court remanded for a second time for a hearing about whether Reeder's relationship with Sabuco created a conflict that precluded him from representing Cabrera with respect to the claim that Sabuco was ineffective.

### 3. Cabrera's Third Hearing (Conflict of Interest)

The trial court held a third evidentiary hearing on February 27, 2008, to explore whether the attorney representing Cabrera during the evidentiary hearing on his ineffective assistance

claim (the second hearing) had a conflict of interest. During the third hearing, Cabrera was represented by new appointed counsel (April Simmons), who called Sabuco (Cabrera's trial attorney) and Reeder (Cabrera's first post-conviction attorney) to testify. Reeder explained that at the time of the second evidentiary hearing, he had recently been assigned to cases pending before Judge Barbara Badger and Sabuco was responsible for supervising public defenders in Judge Badger's courtroom.

The trial court found that the Will County Public Defender John Prehn (not Sabuco) assigned Reeder to represent Cabrera. It also found that Sabuco's duties in Judge Badger's courtroom were supervising the handling of cases, answering questions from assistant public defenders, and dealing with conflict of interest issues. Sabuco was not responsible for evaluating Reeder's performance, reporting information about Reeder's work to supervisors in the public defender's office, or making decisions about Reeder's compensation. Sabuco testified that he advised Reeder to withdraw because of a potential conflict but Reeder did not do so because Prehn told him it was unnecessary. Based on these findings, the trial court concluded there was no conflict.

The appellate court affirmed, explaining that the trial court properly appointed new counsel to explore the conflict issue and concluded the "risk of conflict was remote because Sabuco's supervisory authority over Reeder was minimal" and the record did not show that Reeder had an actual conflict. *People* v. *Cabrera*, No. 3-08-0558, at 7-8. Cabrera filed a PLA asserting that Reeder had a potential and actual conflict. On September 29, 2010, the Illinois Supreme Court denied the PLA. Cabrera did not file a petition for a writ of certiorari with the United States Supreme Court.

### C.       Cabrera's § 2254 Petition

Cabrera filed his federal habeas corpus petition on September 2, 2011.  Although a certificate of service attached to the undated petition is dated September 7, 2011, the docket indicates that the envelope containing the petition and certificate of service was post-marked August 29, 2011.  The respondent does not challenge the petition's timeliness so the court will not address the date of the petition further.  This is Cabrera's second federal habeas petition.  *See Cabrera* v. *Hinsley*, 324 F.3d 527, 528 (7th Cir. 2003) (challenging convictions and sentences for murder, robbery, and burglary and noting that Cabrera was already subject to a sentence of natural life for an unrelated murder).  It is not barred as "second or successive" as the first petition challenged different underlying convictions.  *See Beyer* v. *Litscher*, 306 F.3d 504, 508 (7th Cir. 2002).

In the petition before the court, Cabrera argues that his trial counsel was ineffective for failing to call four prisoners (David Starks, Wilfredo Rosario, Ronald Roach, and Felix Jusino) to testify at trial.  He also contends that his post-conviction counsel was ineffective because he was laboring under a conflict of interest.

## ANALYSIS

For the following reasons, the doctrine of procedural default bars Cabrera's ineffective assistance of trial counsel claim, none of the exceptions to procedural default are applicable, and in any event, the claim fails on the merits.  In addition, Cabrera's ineffective assistance of post-conviction counsel claim is not cognizable and, therefore, cannot serve as the basis for habeas relief.

### A. Ineffective Assistance of Trial Counsel

#### 1. Procedural Default

A petitioner must present his claims to all levels of the Illinois courts to avoid procedural default. *See O'Sullivan* v. *Boerckel*, 526 U.S. 838, 844–45, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). Thus, the court must determine if Cabrera presented the claims in his federal habeas petition to the state trial court, the Illinois Appellate Court, and the Illinois Supreme Court. *See Castille* v. *Peoples*, 489 U.S. 346, 349, 109 S. Ct. 1056, 103 L. Ed. 2d 380 (1989); *Lewis* v. *Sternes*, 390 F.3d 1019, 1025–26 (7th Cir. 2004) ("Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings . . . . This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory.").

Cabrera asserts his trial counsel should have called David Starks, Wilfredo Rosario, Ronald Roach, and Felix Jusino. Before the trial court and during his first post-conviction appeal, Cabrera argued his trial counsel was ineffective for failing to call three inmates (Starks, Rosario, and Nelson). However, in his PLA, filed after multiple post-conviction hearings, Cabrera contended his post-conviction counsel was ineffective based on a conflict of interest. Asserting an ineffective assistance of post-conviction counsel claim is insufficient to preserve a claim of ineffective assistance of trial counsel. *See United States ex rel. Barbosa* v. *Hardy*, No. 11 C 1622, 2011 WL 5592845, at *5 (N.D. Ill. Nov. 14, 2011) (claims of ineffective assistance of trial and appellate counsel are distinct so presentment of an ineffective assistance of trial counsel argument does not preserve a claim of ineffective assistance of appellate counsel).

Moreover, Cabrera did not raise any ineffective assistance of trial counsel claims in his state court proceedings based on the failure to call Roach and Jusino. Accordingly, Cabrera's failure to pursue an ineffective assistance of trial counsel claim based on the failure to call Starks, Rosario, Roach, and Jusino through one complete round of state court review, including a PLA filed with the Illinois Supreme Court, means that claim is procedurally defaulted. *See O'Sullivan*, 526 U.S. at 844–45.

### B. Exceptions to Procedural Default

A federal court may not grant relief on a procedurally defaulted claim unless the petitioner can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that the court's failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman* v. *Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). Cabrera does not contend that cause and prejudice or the fundamental miscarriage of justice exceptions excuse his default. Thus, he has forfeited any arguments based on these exceptions. *See Crockett* v. *Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008) (when petitioner does not assert reasons why his procedural default should be excused, the court "cannot consider his claim").

In any event, the exceptions do not help him. Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler* v. *Greene*, 527 U.S. 263, 282 n.24, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999). Here, Cabrera failed to properly follow state procedural rules. Nothing in the record before the court indicates that an objective factor prevented him from doing so.

Moreover, Cabrera has not asserted that the attorneys in his direct or collateral appeals were ineffective for failing to raise his ineffective assistance of trial counsel claims on appeal. Even if he had done so, this would not excuse his default as "a claim of attorney ineffectiveness which is defaulted in state court cannot be the basis for cause, unless the petitioner can establish cause and prejudice for the ineffectiveness claim as well." *Promotor* v. *Pollard*, 628 F.3d 878, 887 (7th Cir. 2010); *see also Edwards* v. *Carpenter*, 529 U.S. 446, 450–51, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000) ("[A] procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself.").

Cabrera unquestionably has defaulted any ineffective assistance of appellate counsel claim based on appellate counsel's failure to challenge trial counsel's effectiveness because he did not raise this issue at all in his state court proceedings. No objective factor justifies his failure to do so. Therefore, he cannot establish cause. Because he cannot do so, the court will not address prejudice. *Promotor*, 628 F.3d at 887.

The court acknowledges that two recent Supreme Court cases carve out a "narrow exception" to the usual rule that a petitioner's *pro se* status or the ineffective assistance of counsel at initial-review collateral proceedings do not establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel. *Martinez v. Ryan*, — U.S. —, 132 S. Ct. 1309, 1320, 182 L. Ed. 2d 272 (2012); *Trevino v. Thaler*, No. 11-10189, 2013 WL 2300805 (May 28, 2013). In *Martinez*, the Supreme Court held that, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral

-13-

proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.*

In *Trevino*, the Supreme Court held that under *Martinez*, cause may excuse procedural default where: "(1) the claim of ineffective assistance of trial counsel was a substantial claim; (2) the cause consisted of there being no counsel or only ineffective counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim; and (4) state law requires that an ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding." *Trevino*, 2013 WL 2300805, at *7 (quoting *Martinez*, 132 S. Ct. at 1318–19, 1320–21). It then clarified the fourth *Martinez* requirement by holding that if state law allows a defendant to present an ineffective assistance of trial counsel claim on direct appeal but that law "—as a matter of its structure, design, and operation—does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal" then the *Martinez* exception applies even though the defendant could have attempted to challenge trial counsel's effectiveness on direct appeal. *Id.* at *11.

Under both *Martinez* and *Trevino*, the claim of ineffective assistance of trial counsel claim must be substantial. As discussed below, Cabrera's ineffective assistance of trial counsel claim is meritless. Thus, he is not entitled to use the *Martinez/Trevino* exception to excuse his default.

The fundamental miscarriage of justice exception is also inapplicable because "this relief is limited to situations where the constitutional violation has probably resulted in a conviction of

one who is actually innocent." *Dellinger* v. *Bowen*, 301 F.3d 758, 767 (7th Cir. 2002) (citing *Schlup* v. *Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). To show "actual innocence," a petitioner must present clear and convincing evidence that, but for the alleged error, no reasonable juror would have convicted him. *Id.*

Construing Cabrera's *pro se* petition broadly, he contends that the jury would not have found him guilty if his trial counsel had called Rosario, Starks, Roach, and Jusino because these four inmates would have provided favorable testimony for the defense. Dkt. 1, Page ID#31. Specifically, he asserts that Rosario would have denied that Cabrera spoke to Spiezio about the hit, Starks would have testified that Cabrera did not order the hit, Roach would have testified that Russell Nelson offered him a deal if he agreed to frame Cabrera, and Jusino would have testified that Cabrera lacked authority to order a hit. As noted by the respondent, this putative testimony counters testimony from the trial, including Spiezio's and Russell Nelson's description of Cabrera's role in the hit.

Pointing to exculpatory evidence following a jury verdict that counterbalances testimony presented at trial is insufficient to establish actual innocence. *See Smith* v. *McKee*, 598 F.3d 374, 287–88 (7th Cir. 2010); *see also United States ex rel. Bell* v. *Pierson*, 267 F.3d 544, 553–54 (7th Cir. 2001) (petitioner did not establish a fundamental miscarriage of justice where his self-defense claim was contradicted by credible testimony and physical evidence presented at trial). Moreover, since Starks's attorney refused to allow Starks to testify at trial and Starks made negative statements to Cabrera about the case, the court cannot conclude that Starks would have in fact testified in a way that would support the high standard applicable to actual

innocence claims.[4]  Accordingly, the actual innocence exception does not apply.  Cabrera's

ineffective assistance of trial counsel claim is, therefore, procedurally barred.

### C.    The Merits – Ineffective Assistance Of Trial Counsel

In any event, even if Cabrera's ineffective assistance claim was before the court, it would

be unavailing.

### 1.    Standard of Review

Assuming Cabrera's ineffective assistance of trial counsel claim was properly before the

court, he may only obtain habeas relief if the state courts' rejection of his claim is "contrary to"

or "an unreasonable application of" clearly established federal law as determined by the United

States Supreme Court.  *See* 28 U.S.C. § 2254(d)(1); *Williams* v. *Taylor*, 529 U.S. 362, 404–05,

120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  A state court's decision is "contrary to" clearly

established Supreme Court law "if the state court arrives at a conclusion opposite to that reached

by the Court on a question of law" or "if the state court confronts facts that are materially

indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to

ours."  *See Williams*, 529 U.S. at 405.

With respect to the "unreasonable application" prong of § 2254(d)(1), a habeas petitioner

must demonstrate that although the state court identified the correct legal rule, it unreasonably

applied the controlling law to the facts of the case.  *See id*.  A state court's application of

Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable.

---

[4]  The respondent notes that prior to resting his case during the second post-conviction evidentiary hearing, Cabrera was unable to produce Rosario as a witness as his counsel was unable to locate Rosario.  Resp. Ex. K at 4990.  The respondent thus argues that there is little reason to think Rosario would have testified at trial.  Given the passage of time between the trial and the second post-conviction evidentiary hearing, this contention is speculative.  Thus the court will consider Rosario's putative testimony.

*Harrington* v. *Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011) ("[E]ven a strong case for relief does not mean that the state court's contrary conclusion was unreasonable.").

The well-known *Strickland* standard governs whether counsel's performance is constitutionally ineffective, *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and must be viewed through the lens of § 2254(d)(1)'s "contrary to" or "an unreasonable application of" provisions. Under *Strickland*, the court must consider (1) whether counsel's representation fell below an objective standard of reasonableness; and (2) whether there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 687–88, 694.

## 2. Cabrera's Ineffective Assistance of Trial Counsel Claim

The state post-conviction trial court orally rejected Cabrera's ineffective assistance of trial counsel claim on the merits. *See* Resp. Ex. K at 5012-14 (ruling); *id.* at 4991-5011 (counsels' arguments and colloquy with the court). As that court was the last to consider the merits, this court must determine if its decision comports with § 2254(d)(1). *See Scott* v. *Montgomery*, No. 10 C 4954, 2012 WL 404241, at *11 (N.D. Ill. Feb. 6, 2012) (citing *Garth* v. *Davis*, 470 F.3d 702, 710 (7th Cir. 2006)). Counsel for the State explicitly referenced *Strickland*, and lawyers on both sides, as well as the judge, discussed the two *Strickland* prongs. Resp. Ex. K at 4990-5014. Because the trial court analyzed the two *Strickland* prongs, its decision is not "contrary to" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Hardy* v. *Cross*, — U.S. —, 132 S. Ct. 490, 494, 181 L. Ed. 2d 468 (2011) (when a state court identifies the correct Supreme Court standard, its

decision is not "contrary to" clearly established federal law); *Garth*, 470 F.3d at 710 (a "decision applying the correct legal rule to the facts of a case is not 'contrary to' within the meaning of §2254(d)(1)").

The court thus turns to whether the decision was "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). The trial court observed that counsel had been aware of Rosario's and Starks's expected testimony, as well as the fact that Starks had a pending case against him and thus had no incentive to testify against his own self-interest. It also found that Cabrera's trial counsel decided, after considering the likely testimony of Rosario and Starks and the other potential witnesses, consulting with Cabrera, and obtaining his consent, not to call Rosario or Starks. Accordingly, it concluded that the decision was tactical and that counsel had acted properly. It thus denied Cabrera's request for post-conviction relief based on ineffective assistance of trial counsel. Resp. Ex. K at 5012–14.

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citation omitted) (internal quotation marks omitted). The trial court found that trial counsel's decision was tactical, conscious, and based on an assessment of all of the potential evidence that could have been presented at trial. Resp. Ex. K at 5012. Given the likely testimony of Rosario and Starks and the fact that calling them would have undercut the defense's theory of the case, it was not unreasonable for the state court to reach this conclusion. *See*

*Harrington*, 131 S.Ct. at 788 ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.").

This is especially true given that Cabrera's appointed counsel for the hearing (Reeder) did not contest trial counsel's testimony that she obtained Cabrera's consent to not call Rosario. Resp. Ex. K at 4996. Moreover, while Reeder contended that trial counsel did not interview Strarks, the trial court found, and the record supports, the fact that trial counsel was aware of Starks's expected testimony because Sparks and Cabrera had spoken about it. *Id*. at 5012. Reeder also did not contest Sabuco's testimony that he thought Cabrera was "on the same page throughout the course of the trial" regarding strategic decisions. *Id*. at 4965–66.

Finally, the court acknowledges that Cabrera later challenged Reeder's effectiveness based on an alleged conflict of interest. This issue is discussed more fully below. For present purposes, however, the court notes that, while Cabrera argues generally that Reeder should not have represented him, he has not articulated any reason why Reeder's performance during the post-conviction evidentiary hearing was lacking or prejudicial or pointed to anything Reeder should have done differently. The court's review of the transcript shows that Reeder vigorously represented Cabrera during the second evidentiary hearing addressing trial counsel's effectiveness and made reasonable, articulate arguments based on the facts. Accordingly, even if Cabrera's ineffective assistance of trial counsel claim was properly before the court, it would be rejected.

## B. Ineffective Assistance of Post-Conviction Counsel

Cabrera next asserts that Reeder, the lawyer who represented him during the second hearing challenging trial counsel's effectiveness, was laboring under a conflict of interest and that the failure to appoint a different, non-conflicted lawyer entitles him to federal habeas relief. The trial court considered this issue during Cabrera's third post-conviction hearing, and Cabrera filed unsuccessful appeals with the Illinois Appellate Court and the Illinois Supreme Court so the issue is properly before this court.

The respondent correctly notes that 28 U.S.C. § 2254(i) provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." Thus, Cabrera's claim of ineffective assistance of post-conviction counsel is not cognizable. *See United States ex rel. Adkins* v. *Akpore*, No. 06 C 4834, 2013 WL 2297045, at *8 (N.D. Ill. May 24, 2013) ("[A]n independent claim [of ineffective assistance of state post-conviction counsel] is not cognizable." (citing 28 U.S.C. § 2254(i)).

Moreover, as a general rule, there is no constitutional right to effective assistance of counsel in post-conviction proceedings. *See Coleman*, 501 U.S. at 756–57. The Supreme Court's recent decisions in *Martinez* and *Trevino*, discussed above, create an exception to this rule that only potentially allows petitioners to rely on ineffective assistance of post-conviction counsel to excuse procedural default. *Martinez*, 132 S. Ct. at 1319–20; *Trevino v. Thaler*, 2013 WL 2300805, at *11. This limited exception does not abrogate § 2254(i), which bars freestanding claims of ineffective assistance of post-conviction counsel. Thus, Cabrera's

ineffective assistance of post-conviction counsel claim cannot serve as the basis for federal habeas relief.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, which provides that the district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant," the court turns to whether a certificate of appealability should issue. Under 28 U.S.C. § 2253(c)(2), "(1) [a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2) [t]he certificate must identify each substantial constitutional question; (3) [i]f there is a substantial constitutional issue, and an antecedent non-constitutional issue independently is substantial, then the certificate may include that issue as well; (4) [a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5) [i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal." *Davis* v. *Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

For the reasons stated above, the court finds that there can be no showing of a substantial constitutional question for appeal as reasonable jurists would not find this court's ruling debatable. *Lavin* v. *Rednour*, 641 F.3d 830, 832 (7th Cir. 2011) (citing *Slack* v. *McDaniel*, 529 U.S. 473, 484–85, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000)). In this regard, the court notes that although the Seventh Circuit has not yet analyzed the Supreme Court's 2012 decision in *Martinez* and the Supreme Court's decision in *Trevino* issued in May 2013 and thus these

decisions have not been the subject of extensive analysis yet, the court believes that the application of these two cases to the facts in this case is not debatable. Accordingly, the court declines to issue a certificate of appealability.

## CONCLUSION

Randy Pfister, the Acting Warden of the Pontiac Correctional Center in Pontiac, Illinois, has custody of Cabrera, who is currently incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas. Thus, the clerk is directed to substitute Randy Pfister as the respondent. In addition, Cabrera's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied and the court declines to certify any issues for appeal under 28 U.S.C. § 2253(c).

Enter:

Dated: June 7, 2013

_____
JOAN HUMPHREY LEFKOW
United States District Judge